# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

ERICA N. STEWART                                                           PLAINTIFF

V.                                            CAUSE NO. 3:16-CV-744-CWR-LRA

BELHAVEN UNIVERSITY                                     DEFENDANT

## ORDER

Before the Court are Belhaven University's motion for sanctions and dismissal, Docket No. 69, as well as its motion for summary judgment, Docket No. 124.[1] The matters are fully briefed and ready for adjudication.

## I. Factual and Procedural History

In 2015, Erica Stewart sought a job in the Online Admissions Department of Belhaven University. She knew Tarold Durham, the director of that office, through social channels. Durham had led her to believe that there would be a vacancy within the Department.

Stewart and Durham then exchanged a series of sexually explicit text messages and photos. Durham wanted sexual favors in exchange for the job offer, while Stewart kept up flirtatious banter to try and get the job. When no offer materialized, Stewart filed a charge of discrimination with the EEOC and subsequently commenced this suit against Belhaven and Durham. She asserted a variety of claims under Title VII and Mississippi law.

Durham—who was fired from Belhaven for his conduct—maintained that the messages were flirtatious and consensual. The record bore that out to the extent that there was no evidence that he had caused Stewart emotional distress. As a result, Durham was dismissed from this case. *See* Docket No. 98.

---

[1] Belhaven's motion for leave to file excess pages, Docket No. 126, is granted.

Belhaven now seeks sanctions and summary judgment. It contends that Stewart's case should be dismissed because she disposed of her cell phone in disregard of her obligation to preserve relevant evidence. Alternatively, Belhaven seeks summary judgment because there was no actual job vacancy, Durham was not a supervisor within the meaning of Title VII, and Stewart did not suffer any emotional distress at Belhaven's hands, among other reasons.

## II. Legal Standards

### A. Sanctions for Destruction of Evidence

"Courts agree that a willful or intentional destruction of evidence to prevent its use in litigation can justify severe sanctions." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 618 (S.D. Tex. 2010). "Sanctions for spoliation of evidence may include awarding attorney fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, excluding evidence or expert testimony, striking pleadings, entering a default judgment, and dismissing the case entirely." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 683 (S.D. Tex. 2013) (quotation marks and citation omitted). Spoliation of evidence may also subject a party to criminal penalties, contempt sanctions, and disciplinary sanctions. *Wallace v. Ford Motor Co.*, No. 3:11-CV-567-CWR-FKB, 2013 WL 3288435, at *5 n.1 (S.D. Miss. June 28, 2013). Much like criminal sentencing, an appropriate discovery sanction will take into account principles of deterrence, restitution, and punishment in proportion to the significance of the violation. *McKinney*, 964 F. Supp. 2d at 682-83.

Dismissal with prejudice is an extreme sanction. It is appropriate "only if: (1) there is a clear record of delay *or* contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quotation marks and citations omitted). "[I]t is not a party's negligence—regardless of

how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is the stubborn resistance to authority which justifies a dismissal with prejudice." *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988) (quotation marks and citation omitted).

### B. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

### A. Sanctions

This case concerns text messages and photos sent between smartphones. The parties disagree about what was sent, when it was sent, and why it was sent. That means the parties' phones were critical evidence. The Federal Rules of Civil Procedure and this Court's Case Management Order required the phones to be preserved.

Stewart knew that the texts and photos on her phone were important. The EEOC investigator intimated that Stewart had not shared all of the relevant communications with the EEOC. When this suit was commenced, Belhaven's attorneys immediately sent Stewart's lawyer a letter demanding that she "preserve and sequester" her phone. And in spring 2017, as discovery progressed, Stewart had to sign several documents, under oath, indicating that she still had her phone and had not deleted or excluded any of its content from the defendants.[2]

Belhaven was therefore surprised to learn during Stewart's deposition that the phone had broken and was no longer in her possession. After repeated inquiries to her counsel over the following weeks, Belhaven discovered that Stewart had taken her phone to a local AT&T store and purchased a new phone. She had not kept her old phone.

No independent forensic examination had been conducted before the phone was lost. Such an examination probably would have hurt Stewart's case. We know that because testimony and screenshots now establish that Stewart had indeed failed to share all of the relevant messages with the EEOC. In her deposition, Stewart could not explain how some of the text messages were deleted from her phone before they were shared with the EEOC.[3]

---

[2] Among these documents is her affidavit which states that she had fully produced all text messages and digital communications between her and Durham, and that she had not deleted any or allowed anyone to delete any messages.

[3] Stewart's deposition also contained this gem:

    Q:        Do you consider any of the things that you said during this conversation between November 28th and the -- January 2016 to be flirtatious?
    A:        Was I flirting with him?
    Q:        Do you deem any of those messages that you sent to be flirtatious?
    A:        I don't know what -- like flirtatious can be anything, so I don't know --
    Q:        What's your definition of flirtatious?
    A:        I don't know. I mean, I just have -- there's so many different ones. I don't think I was flirting.
    Q:        Tell me what your definition is, all of them.
    A:        Of flirtatious?
    Counsel:  I am going to object that she hasn't been identified as an expert in the meaning of words.

Stewart denies that her conduct is sanctionable. She blames opposing counsel for not getting stored copies of her text messages from her iCloud account or her new phone. She also says that opposing counsel failed to try and recover the phone directly from the AT&T store. Stewart even has the gall to ask the Court to award *her* attorney's fees for having to respond to Belhaven's motion.

These arguments are inexcusable. Stewart and her attorney had the duty to preserve her phone. When they failed to do so, *they* should have attempted to recover stored messages from iCloud, the new phone, and the AT&T store. This kind of deflection has no defense.[4]

When Stewart *did* search her iCloud, moreover—after her attorney filed this response memorandum—she identified new, material, and important evidence. That is hardly a sign of diligence, though; it directly contradicts Stewart's earlier sworn statements that she had produced everything to Belhaven.

The Court finds that Stewart's behavior, from the EEOC investigation to the present, suggests a pattern of deception. The discovery violation and false statements merit sanctions. Her attorney's failure to comply with his discovery obligations under the Rules and Court Orders also merits sanctions.

Belhaven argues that Stewart's conduct warrants dismissal of her case. That is not an effective sanction because her case fails on the merits. Monetary sanctions are the only option.

The undersigned concludes that the discovery violations in this case merit a $100 fine to Stewart, which shall be paid to the Clerk of Court, and a $500 attorney's fee assessment to her

---

[4] It also is factually incorrect. Defense counsel says that he personally went to the AT&T store in question, spoke with the manager, and learned that phones turned into AT&T are not traceable and, even if they were able to be located, are erased twice to delete customers' personal data.

counsel, which shall be paid to Belhaven's law firm in partial recompense for the time defense counsel had to spend on this broken-phone charade.[5]

### B. Summary Judgment

Stewart first contends that Belhaven is liable under Title VII for Durham's arguable sex discrimination. Under Title VII,

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (quotation marks and citation omitted). A supervisor's "ability to exercise significant direction over another's daily work" is not enough to make the employer liable under Title VII. *Id.*

In *Morrow v. Kroger*, for example, the Fifth Circuit found that an alleged harasser was not a supervisor under Title VII despite "evidence that [the supervisor] filled out performance evaluations; handled administrative tasks such as scheduling; boasted at a barbeque at his house that he could influence who was hired into the meat department; was consulted about hiring decisions; and may have had a close and friendly relationship with" the hiring authority. 681 F. App'x 377, 380 (5th Cir. 2017).

---

[5] The Court takes no joy in imposing sanctions on parties or counsel. Our system of justice requires those with claims to bring their disputes to a court of law instead of taking measures into their own hands. Courts have a duty to protect that process. When the process itself has been so defiled, flagrantly abused, or mistreated—as done throughout this litigation by plaintiff and her counsel—judges must act. We must do so not only to penalize those whose conduct warrant sanctions but to discourage others from walking down that same treacherous path. This is not the first time this Court has imposed sanctions. *See, e.g.*, *Taylor v. Consolidated Pipe & Supply Co.*, No. 3:15-CV-585-CWR-FKB, 2017 WL 3090317 (S.D. Miss. July 20, 2017) (dismissing case as sanction); *Brown v. Asea Brown Boveria, Inc.*, No. 3:14-CV-37-CWR-LRA, 2015 WL 7289492 (S.D. Miss. Nov. 16, 2015) (imposing sanctions against counsel); *Brown v. Dow Chem. Co.*, No. 3:13-CV-359-CWR-FKB, 2015 WL 5785571 (S.D. Miss. July 9, 2015) (imposing sanctions against *pro se* plaintiff); *Firestone Building Prods. Co. v. Frazier*, No. 3:10-CV-375-CWR-LRA, 2012 WL 243453 (S.D. Miss. Jan. 25, 2012) (striking answer and entering default against offending party). The Court hopes it is the last time it has to take such action.

Stewart's case does not meet this standard. The undisputed evidence shows that Durham did not have authority to hire anyone at Belhaven. Summary judgment must be granted on this claim.

Next is Stewart's state-law claim for negligent supervision. The claim also cannot proceed, as it is undisputed that Durham was not acting in the course and scope of his employment when he engaged in sexual communications with Stewart. *See Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 362 (Miss. 2004) ("An employee's personal unsanctioned recreational endeavors are beyond the course and scope of his employment.").

Finally, Stewart contends that her emotional distress claims should proceed to trial. But the Court has previously found a lack of evidence that Stewart suffered emotional distress. *See* Docket No. 98 (granting Durham's motion for summary judgment). Her identical claims against Belhaven are foreclosed.

## IV. Conclusion

The motion for sanctions is granted in part and denied in part. The motion for summary judgment is granted. Stewart and her counsel shall pay their sanctions within 30 days or, if an appeal is taken, within 30 days of issuance of the mandate from the Fifth Circuit.

**SO ORDERED**, this the 8th day of September, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE